In re MacKAY et al.

(Surrogate's Court, Kings County.   June, 1912.)

WILLS (§ 436*)—SALES—DISTRIBUTION.

Where Wyoming lands of which a New York testator died seised were sold by the executor under the power of sale in the will, and such sale was valid in Wyoming, though invalid in New York, as to a child born to testator after execution of the will because the will made no provision for such child, the proceeds of the sale came to New York impressed with the express purpose of the will, so that they should be applied in payment of the legacies; and they could be disposed of only as the will directed, and not in payment of the share of the estate allowed to an after-born child by the laws of New York, but not by the will or by the laws of Wyoming.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 947–950; Dec. Dig. § 436.*]

Judicial settlement of the accounts of Henry MacKay and another, as executors of Charles C. MacKay, deceased.   Proceeds of sale ordered disposed of as will directs.

Rounds, Schurman & Dwight (Carl A. Hansmann, of counsel), for executors.

William F. Hagarty, for general and special guardians.

KETCHAM, S.   The will under which the present accounting is made contained a devise of the whole estate, real and personal, to executors in trust as follows:

"For the execution of my will, with power to rent, sell and dispose of the same at public or private sale at such times and upon such terms and in such manner as to them shall seem meet."

Trusts were then declared for the purpose of erecting a monument and cornerstone in a burial plot and for the perpetual care of such plot and for the payment of numerous legacies.   The will contained in its fifth paragraph a gift to a residuary legatee, and the instrument closed with the following words:

"I hereby authorize and empower my said executors and trustees, or their successors, to grant, bargain, sell and dispose of any and all my property, both real and personal, to give good title to the same, and to make such necessary conveyances in the law as is requisite to vest title in the purchaser."

To this was added a codicil which varied several of the legacies provided for in the will, rescinded the paragraph of the will containing the residuary direction and directed the residue of the estate, both real and personal, to be divided into five equal parts and to be transferred and paid over in manner prescribed.

There was a child born to the testator after the making of the will who was not provided for or mentioned in the will.   The testator died seised of lands in Wyoming, which were sold in the exercise of the power of sale contained in the will and the proceeds of the sale are brought into this accounting.   It is properly conceded that there has been a conversion of these lands into personalty.   The question be-

tween the parties may be stated as follows: Was the conversion effected in Wyoming as a means of fulfilling the will or was the conversion held wholly in abeyance until the fund reached this state, with the result that the will was aborted? Is the fund derived from the sale to be disposed of in accordance with the will or in accordance with the law of this state, under which an after-born child may be entitled to the share which it would have taken in case of intestacy?

Perhaps a homely test might be: Since the lands were sold by virtue of the will are not the proceeds necessarily subject to the will in its entire scope? If the will were availed of for the purpose of selling the lands, under a power obviously intended only to reduce the proceeds to the subsequent purposes of the instrument, can the will, as soon as it has served to produce the proceeds, be ignored as to the destination of the fund?

There is no provision in the law of Wyoming by which a child, born after the making of the will, can have any other right or interest than such as the will provides. As to lands without this state, our statute as to such child left the child here concerned subject to the laws of the state in which the lands were situated. Thus at the time of the decedent's death this child had no heritable relation to the lands in Wyoming, for under the laws of that state as to real estate therein situated the will of the decedent now before the court was invalid. That will is in no sense void in either state. It only fails to operate upon the rights or interests which would be of this child if intestacy had existed. As to lands in this state, the power of sale was defeated by the statute, because this child was an heir at law whose inheritance could not be sold under the power. But as to the Wyoming lands there was no such obstacle to the exercise of the power. The law of Wyoming made no such obstacle, and the law of New York could make none if it had tried. Hence the will, unimpaired as to the real estate in Wyoming, could be used to effect the sale of the Wyoming real estate. The testator had lawful right to devise the Wyoming lands in trust to pay legacies or to create a power for that purpose. As to such lands, he could maintain in his will any scheme of disposition, although the same scheme was forbidden to him with respect to New York lands.

It is fundamental in the law as to equitable conversion that, if the basis therefor be sought in a will, it cannot be availed of for any other than the testamentary purpose. Matter of Wangner, 74 Hun, 352, 26 N. Y. Supp. 302. It would be a doctrine foreign to the theories from which the fiction of equitable conversion is derived to allow the will to be laid hold of for the purpose of working a destruction of its own ultimate objects. In the will at bar, except for the mortuary provision, it was never intended that any lands should be sold for any purpose other than the payment of the legacies.

In Butler v. Green, 65 Hun, 99, 19 N. Y. Supp. 890, a sale of lands in New Jersey was made under a trust invalid in New York, but valid in New Jersey. The proceeds of the New Jersey sale were brought into New York and mingled with assets which were to be administered only under a law which forbade the trust. If the fund

derived from New Jersey were disposed of under the laws of New York as personalty, the trust would have been defeated to the extent of the fund. If regarded as retaining the impress and character of New Jersey real estate, it would be applied to the fulfillment of the trust.

So, in the case at bar, the sale in all its purposes was valid in Wyoming, though as to this child forbidden and invalid in New York. If the fund in question should follow the law of Wyoming, which has adopted the will, it will be applied to the ends which the will contemplated, while, if it be regarded as an accretion to the New York personalty subject to the disposition which the New York courts will make of the assets within their reach, the will must be defeated. The parallel of fact makes the result and the reasoning in that case inevitable in its control of this case. The test there was whether the testator died intestate or testate as to the New Jersey lands. Here the test is substantially the same. As to the Wyoming property was there or not a valid power of sale, and, if yes, could its proceeds be diverted by any fiction professing the name of equity from the purpose for which the will was made and which the Wyoming courts undertook to effect?

The only distinction which is attempted in behalf of the child here concerned is that in the case cited the power of sale was discretionary, while at bar the power is said to have been mandatory. It has not been possible to recognize the existence of any difference in this respect. In both cases there was a devise in trust. Here there was authority and power given to both executors and trustees and their successors to "sell any and all my property, both real and personal." A power which contemplated the sale of all lands or any lands is far short of a peremptory direction to sell all. Nor is the extension of the power to their successors consistent with an intention that the lands shall change their character at death.

Moreover, the devise was in trust, with power to "rent, sell and dispose of the same at such times and upon such terms, and in such manner as to them (the executors), shall seem meet." Whether the provisions here material be regarded as a trust or as a power in trust, their effect is the same upon the inquiry as to the testator's intention. In the case cited the discretionary character of the power was used in the opinion, but, as an incident to many features of the trust, all eloquent of an intention on the part of the testator that no change in the nature of the real estate should be effected immediately upon his death. Some of these features relied upon by the court in the Butler Case, supra, are reproduced in the will now under examination. There, as here, the purpose was that the title should be vested in the executors and trustees for certain purposes. In the case cited there is a gift in remainder upon the termination of two lives, and the court quotes the words, "give, devise and bequeath," when used with respect to the gift in remainder as evidence that the legal estate in the lands passed by the will upon the testator's death.

Here the attempted trust, except as to the small amount for the erection and care of a monument and burial plot, is for the payment

of legacies, but by the codicil the trustees are directed to divide the residue, both real and personal, and to transfer and pay over the same in proportions designated. There authority was given to the trustees to maintain and take care of the devised property, to collect the rents, to lease and pay taxes, assessments and mortgages, to keep the property in repair and to improve and develop it. These directions, indicating that there was nothing in the will to show an intention that the real estate was to be regarded as converted at death, are not found in equal detail in the instrument under which this accounting proceeds, but their equivalent is presented.

Among the elements of the attempted trust was a power to "rent, sell or dispose of" the trust estate. A devise of both real and personal estate in trust to rent would forbid an intention that the lands were intended necessarily to drop their normal characteristics upon death. Neither in the will nor in the financial condition of the testator at the time of the making of the will or at his death is any circumstance shown from which it can be implied that the will contemplated the necessity of converting the estate at once for the purpose of fulfilling its purposes.

The conversion took place, not by mere virtue of the will, for the power, being discretionary, only affects property actually sold. The Wyoming lands were converted only by virtue of the adoption of the will and the exercise of the power by the Wyoming court. But that was not a naked power of sale. It could not be. Sweeney v. Warren, 127 N. Y. 426, 28 N. E. 413, 24 Am. St. Rep. 468; Trask v. Sturges, 170 N. Y. 482, 63 N. E. 534; Matter of Green, 63 Misc. Rep. 638, 118 N. Y. Supp. 747. It was a power to sell "for the execution of my will," and, when the metamorphosis of the property arose, it was only for the purpose of applying the proceeds to the trust and the payment of the ordained legacies. In Clarke v. Clarke, 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028, a case generally instructive and controlling, the following is stated as familiar:

"It is a doctrine firmly established that the law of a state in which the land is situated controls and governs its transmission by will or its passage in case of intestacy."

The finding will be that the Wyoming lands, though converted, were so converted only for the purpose of fulfilling the will, and that the proceeds of the sale reached the state of New York impressed with such purpose, and must be disposed of as the will directs.